## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CHRISTINA MARIE SEAWELL,** individually
and on behalf of others similarly situated

**Plaintiff,**

**v.**

**KONZA PRAIRIE PIZZA, INC., d/b/a
DOMINO'S PIZZA** and **JEFFREY MADDOX**

**Defendants.**

**Case No. 20-CV-2130-JAR-KGG**

## MEMORANDUM AND ORDER

Plaintiff Christina Seawell, on behalf of herself and others similarly situated, brings this

action against Defendants Konza Prairie Pizza, Inc. and Jeffrey Maddox asserting violations of

the Fair Labor Standards Act ("FLSA") and the Kansas Wage Payment Act ("KWPA").  She

alleges that Defendants failed to properly reimburse her and other pizza delivery drivers.

The parties are before the Court with an Amended Joint Motion for Settlement

Agreement Approval (Doc. 28).  They state that they have agreed to settle these claims on a

class-wide basis and request that the Court approve the settlement of Plaintiff's FLSA and

KWPA claims.  For the reasons set forth below, the Court grants in part and denies in part the

parties' motion for settlement approval.

## I.     Background

Plaintiff worked for Defendants as a pizza delivery driver.  She originally filed her

Complaint in this Court on March 19, 2020, asserting an FLSA claim and collective action

allegations.  She alleged that Defendants used a flawed method to determine reimbursement rates

for drivers using their personal vehicles for business use, which caused wages to fall below federal minimum wage.

The parties engaged in private mediation in October 2020.  In February 2021, they filed a Joint Motion for Settlement Agreement Approval which was denied without prejudice to refiling. On April 5, 2021, Plaintiff filed an Amended Complaint asserting class and collective action allegations under the KWPA and FLSA.  Plaintiff alleges that Defendants failed to properly reimburse her-and other pizza delivery drivers-for expenses which violated minimum wage requirements under Kansas and federal law.

On May 6, 2021, the parties filed an Amended Joint Motion for Preliminary Approval of Settlement Agreement.  The parties request that the Court: (1) preliminarily approve the Settlement Agreement; (2) certify the proposed class for settlement purposes; (3) approve and authorize mailing/emailing the proposed Class Notice of Proposed Class Action Settlement; and (4) set a date for a final approval hearing.

## II.     KWPA Claim – Rule 23 Settlement

Plaintiff seeks certification of the proposed class for settlement purposes, preliminary approval of the settlement agreement, and approval of the notice.  The Court will address each factor below.

### A.     Class Certification

#### 1.     Standard

"Class action settlements are premised upon the validity of the underlying class certification."[1]  The district court must conduct a "rigorous analysis" to ensure that the proposed

---

[1] *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004).

class meets the requirements of Fed. R. Civ. P. 23.[2]  The requirements under Rule 23(a) include (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation.[3]  In addition, because Plaintiff seeks certification under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 2.   Discussion

The parties' proposed settlement class is "[a]ll delivery drivers who worked for Defendants from July 21, 2017 through [the date the Court grants preliminary approval]."[4]

### a.   Numerosity

Rule 23(a)(1) requires a plaintiff to show that "the class is so numerous that joinder of all members is impracticable."  Numerosity is not "a question of numbers."[5]  Rather, there are several "factors that enter into the impracticability issue," including "the nature of the action, the size of the individual claims, and the location of the members of the class."[6]  In this case, the parties state that the settlement class consists of more than 1,500 individuals, which is so numerous as to make joinder impracticable.[7]  Thus, the numerosity requirement is met.

---

[2] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).

[3] Fed. R. Civ. P. 23(a); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613 (1997).

[4] Doc. 28 at 4.

[5] *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (quoting *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977)).

[6] *Id.* (first quoting *Horn*, 555 F.2d at 275; and then quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1762 (3d ed. 2005)).

[7] *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (recognizing that Rule 23(a)(1) is not a "strict numerical test" but finding it "frivolous" to contest the numerosity of a 1,100-member class because "to reach this conclusion is to state the obvious"); *see also Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504 (D. Kan. 2014) ("Courts have found that classes as small as twenty members can satisfy the numerosity requirement, and a 'good faith estimate of at least 50 members is a sufficient size to maintain a class action.'").

### b.      Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The commonality requirement is satisfied if the class members' claims "depend upon a common contention" whose "trust or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[8]  "A finding of commonality requires only a single question of law or fact common to the entire class."[9]  Here, the parties assert that the common questions include whether the class members' vehicle-related expenses resulted in payment lower than minimum wage, whether Defendant violated state and federal wage and hour laws, and whether the class members sustained damages.  The Court finds that these questions satisfy the commonality requirement.

### c.      Typicality

Pursuant to Rule 23(a)(3), Plaintiff must demonstrate that her claims are "typical of the claims or defenses of the class."  The test of typicality is whether "all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[10]  Here, Plaintiff contends that she and the proposed class members were not paid for all mileage reimbursement expenses.  In addition, she contends that the legal standards and requirements for proving the claims are the same for Plaintiff's individual claims and the putative class members' claims.  Accordingly, the Court concludes that typicality is met.

### d.      Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  The Tenth Circuit has set forth two relevant questions: "(1) do the

---

[8] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[9] *DG ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010).

[10] *Id*. at 1199.

named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[11]  In this case, Plaintiff and Plaintiff's counsel assert that their interests are not antagonistic to the interests of the putative class members.  There is no showing of conflict, and thus the Court finds that the adequacy requirement is met.

### e.    Predominance

Under Rule 23(b)(3), the Court must determine "that the questions of law or fact common to class members predominate over any questions affecting only individual members."  As noted above, the common fact of whether Plaintiff and the putative class members were properly compensated for under wage and hour laws for mileage expenses predominate over any individual questions.  Thus, the Court finds that predominance is met.

### f.    Superiority

Rule 23(b)(3) also requires that the class action be the superior method "to other available methods for fairly and efficiently adjudicating the controversy."  Here, Plaintiff contends that the alternative method could be more than 700 individual claims with relatively small recovery, and this method would be uneconomical to both the putative plaintiffs and counsel.  Thus, the Court's resolution as to the common questions in one action is a superior method.

In sum, the proposed settlement class meets all the requirements under Rule 23(a) and 23(b)(3).

---

[11] *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

B.      **Class Settlement**

1.      **Standard**

Pursuant to Rule 23(e), a class action can only be settled with court approval.  The Court must consider whether the settlement is "fair, reasonable, and adequate."[12]  When assessing the proposed settlement, the Tenth Circuit has set forth four factors for the district court to consider:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.[13]

"The settlement approval process typically occurs in two phases."[14]  The Court first considers "whether preliminary approval of the settlement is appropriate."[15]  "If the Court grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement."[16]  Next, "taking account of all of the information learned during [the preliminary approval] process, the [C]ourt decides whether to give 'final approval' to the settlement."[17]

---

[12] Fed. R. Civ. P. 23(e).

[13] *Rutter*, 314 F.3d at 1188.

[14] *Flerlage v. US Foods, Inc.*, No. 18-2614-DDC-TJJ, 2020 WL 4673155, at *5 (D. Kan. Aug. 12, 2020) (citations omitted).

[15] *Id.*

[16] *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (citation omitted).

[17] *Flerlage*, 2020 WL 4673155, at *5 (first alteration in original) (quoting William B. Rubenstein, Newberg on Class Actions § 13:10)).

At the preliminary approval stage, the Court applies a "less stringent" standard.[18]  "The general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval."[19]  Although the Court will consider the four factors set forth by the Tenth Circuit in depth at the final approval hearing, "they are a useful guide at the preliminary approval stage as well."[20]

### 2.    Discussion

After considering the four factors identified above, the Court finds that they favor approval of the settlement.  First, the parties engaged in mediation with an experienced wage and hour class and collective action mediator.  The parties assert that they both rigorously negotiated the settlement terms throughout the mediation.  Thus, the first factor favors approval.

As to the second factor, serious questions of law and fact exist.  Plaintiff believes that the claims are strong but also recognizes that success is not guaranteed.  Defendants assert that they believe they complied with the applicable wage and hour requirements but also know that they might not ultimately prevail.  This factor favors preliminary approval.

Third, the Court finds that the value of an immediate recovery outweighs the potential for future relief.  Here, the total settlement fund is $330,000, with approximately one-third of that amount allocated to Plaintiff's counsel.  Had litigation continued, it is uncertain whether Plaintiff and the potential class members would have recovered anything.  In addition, Defendants' exposure could have been much higher.  Accordingly, this factor favors preliminary approval.

---

[18] *Id.* (quoting *Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2012 WL 6085135, at *5 (D. Kan. Dec. 6, 2012)).

[19] *Id.* (quoting Rubenstein, *supra* note 17 § 13:10).

[20] *Id.* (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. at 502–03).

Finally, counsel for both Plaintiff and Defendants believe that the settlement is fair and reasonable.  In addition, potential class members can object to the terms of the settlement or opt out of the settlement if they so desire.  The Court agrees that the settlement agreement, for the most part, is fair and reasonable.

The "Release Period," however, causes the Court some concern as it has contrary definitions in the Settlement Agreement.  In the Definitions section of the Settlement Agreement, the "Release Period" is defined as "the period dating back to July 21, 2017 through the date the Court grants Preliminary Approval of this Settlement."[21]  The proposed class also references individuals who worked for Defendants "between July 21, 2017 and [the date the Court grants preliminary approval.]"[22]  In the "Released Claims" section, however, the Release Period is stated as "the limitations period dating back to three years prior to the date the Court grants preliminary approval ("Release Period").[23]  The Notice also references the "Release Period" as "the limitations period dating back to three years prior to the date the Court grants preliminary approval ("Release Period").[24]  Thus, the parties will need to address this issue and ensure that the Release Period and the class definition are consistent throughout.

In sum, the four factors favor preliminary settlement approval, but the Court has concerns with the Release Period and how the Release Period affects the proposed class.  Accordingly, the Court grants settlement agreement approval in part.

---

[21] Doc. 28-1 ¶ 20.

[22] Doc. 28 at 4.

[23] Doc. 28-1 ¶ 47.  If the Court grants approval in 2021, this period would only date back to sometime in 2018 rather than July 21, 2017.

[24] Doc. 28-2 at 5.

### C.    Notice

#### 1.    Legal Standard

Pursuant to Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  When a court certifies a class action under Rule 23(b)(3), Rule 23(c)(2)(B) provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  "In addition to the requirements of Rule 23, the [C]onstitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement."[25]  "[T]his due process right does not require *actual* notice to each party intended to be bound by the adjudication of a representative action."[26]  Instead, the focus is on "whether the district court gave 'the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'"[27]  Notice to class members must "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses:
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and

---

[25] *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005) (citing U.S. Const. amend V; further citations omitted).

[26] *Id.* at 944 (citations omitted).

[27] *Id.* (quoting *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001)).

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).[28]

## 2.      Discussion

The Court cannot approve the Notice as currently drafted because it has several concerns, including that the Notice does not clearly and concisely inform class members of the nature of the action, the definition of the class, or the class claims.  First, the Notice does not adequately inform potential class members of the KWPA claim.  Instead, it simply alleges that Defendants' practice violated the FLSA.  Furthermore, when providing notice of the class definition, the Notice states that the Court has certified a collective under the FLSA and does not inform class members that the Court has certified a class under Rule 23.[29]  This statement is particularly problematic in that the Notice states that the settlement will bind all members of the Class who have not excluded themselves, which is contrary to FLSA collective action opt-in procedures.  Thus, the Notice should be amended to clearly and concisely set forth the KWPA claim and the class definitions under both the KWPA and FLSA.

In addition, as has been previously noted with regard to the Settlement Agreement, the Notice will need to adequately reflect the Release Period.  And the timeframe of the Release Period necessarily affects the proposed class definition.  Finally, the Court notes that the case number in both the Notice and Settlement Agreement contains a typo and needs to accurately state the case number as Case No. 2:20-cv-2130.  Other than these concerns, the Court finds that the Notice meets the other requirements under Rule 23(c)(2)(B) and complies with due process.

---

[28] Fed. R. Civ. P. 23(c)(2)(B).

[29] As will be noted below, the Court has concerns with the preliminary Settlement Agreement as it relates to the FLSA claim and FLSA procedures.

III.     **FLSA Claim – FLSA Settlement**

The FLSA allows an employee to bring a collective action on the employee's behalf and "other employees similarly situated."[30]   However, "an FLSA lawsuit 'does not become a collective action unless other plaintiffs affirmatively opt into the class.'"[31]   To opt in, an individual must give consent in writing.[32]   "Until such consent is given, 'no person will be bound by or may benefit from judgment.'"[33]   In addition, "'[i]n the absence of any claimant's opting in,' an FLSA lawsuit becomes moot when an individual's claim is satisfied because the plaintiff 'lacks any personal interest in representing others in this action.'"[34]

The District of Kansas has set forth a method for obtaining settlement approval of an FLSA action "[w]hen putative class members have not yet received notice of the lawsuit and an opportunity to opt in."[35]   To obtain preliminary approval of a collective action settlement, "[s]uch a motion should ask the court to: (1) conditionally certify the proposed settlement class; (2) preliminarily approve the proposed settlement; and (3) approve a proposed notice to the putative class members."[36]   Once these three items occur, a time period will begin "during which putative class members can opt in to the lawsuit."[37]   After the opt-in time period expires, "the

---

[30] 29 U.S.C. § 216(b); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).

[31] *Shepheard v. Aramark Uniform & Career Apparel, LLC*, No. 15-7823-DDC, 2016 WL 5817074, at *1 (D. Kan. Oct. 5, 2016) (quoting *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003)); *see also Christeson v. Amazon.com.ksdc, LLC*, No. 18-2043-KHV, 2019 WL 354956, at *3 (D. Kan. Jan. 29, 2019) (citation omitted).

[32] *Shepheard*, 2016 WL 5817074, at *1.

[33] *Id.* (quoting *Cameron-Grant*, 347 F.3d at 1249).

[34] *Id.* at *2 (alteration in original) (quoting *Genesis Healthcare Corp.*, 569 U.S. at 73).

[35] *Christeson*, 2019 WL 354956, at *4 (noting the court "cannot sustain a motion for final settlement approval" when putative class members have not yet opted in and setting forth settlement procedures).

[36] *Shepheard*, 2016 WL 5817074, at *3.

[37] *Id.*

parties again may move for final approval of the proposed settlement, the attorney's fee award, and the service awards."[38]

### A.      Collective Class Certification

#### 1.      Standard

The Tenth Circuit has approved a two-step approach in FLSA cases to determine whether plaintiffs are similarly situated.[39]  In the initial "notice stage," the court "determines whether a collective action should be certified for purposes of sending notice of the action to potential class members."[40]  The notice stage "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[41]  At the second step, the district court applies a stricter standard and reviews the following factors to determine whether the opt-in plaintiffs are similarly situated: (1) the disparate factual and employment conditions of the individual plaintiffs; (2) defenses available to the defendant that are individual to each plaintiff; and (3) other fairness and procedural conditions.[42]

#### 2.      Discussion

As noted above, the parties' proposed settlement class is "[a]ll delivery drivers who worked for Defendants from July 21, 2017 through [the date the Court grants preliminary approval]."[43]  Here, in the parties' motion, they do not specifically address certification of a collective class under the FLSA and only address the Rule 23 certification factors.  The Court

---

[38] *Id.*

[39] *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).

[40] *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

[41] *Thiessen*, 267 F.3d at 1102 (alteration in original) (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).

[42] *Id.* at 1103.

[43] Doc. 28 at 4.

recognizes that the factors for class certification under Rule 23 require a more rigorous analysis than the lenient initial certification standard under the FLSA, and the parties are likely similarly situated.  However, because the parties do not address the issue at all, the Court cannot certify the collective action for purposes of sending notice.  Thus, the parties will need to re-submit their motion addressing the standards set forth by the District of Kansas for FLSA settlement approval and specifically address whether the proposed settlement class includes individuals who are similarly situated to Plaintiff.

## B.   Collective Class Settlement

### 1.   Standard

If the parties settle an FLSA claim, the settlement must be presented to the Court for review and determination of whether it is fair and reasonable.[44]  To approve an FLSA settlement, "the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned."[45]  "The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness."[46]  The settlement agreement must also contain an award of attorney's fees.[47]

---

[44] *See Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011) (citing *Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).  The Court notes that the requirement of court approval of FLSA settlements has recently been called into question by some courts. *See Mpia v. Healthmate Int'l, LLC*, No. 19-2276-JAR, 2021 WL 2805374, at *1 n.3 (D. Kan. July 6, 2021) (collecting cases).  The parties here request court approval and do not suggest that it is not required.  Thus, the Court applies the standard used by courts in this district to scrutinize FLSA settlements.

[45] *Peterson,* 2011 WL 3793963, at *7 (citation omitted).

[46] *Id.* at *4.

[47] *Id.*; *see* 29 U.S.C. § 216(b).

2.      **Discussion**

a.      **Bona Fide Dispute**

Plaintiff alleges that Defendants failed to pay its employees minimum wage, after subtracting un-reimbursed vehicle expenses.  Defendants contend that its reimbursement policy reasonably approximated drivers' expenses and thus met the minimum wage requirements. Either party could be correct.  If Plaintiff is correct, Defendant may owe a substantial sum.  If Defendant is correct, Plaintiff and the putative class members could recover nothing.  Thus, the Court finds that a bona fide dispute exists.

b.      **Fair and Reasonable**

"To be fair and reasonable, an FLSA settlement must be reasonable to the employee and must not frustrate the policies embodied in the FLSA."[48]  Courts may look to the framework for evaluating class action fairness as instructive when evaluating whether an FLSA settlement is fair and reasonable,[49] including the following factors:

> (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.[50]

The Court previously discussed these factors above with regard to Plaintiff's KWPA claim and found that the factors weighed in favor of settlement.  That analysis is equally applicable here.  The concern with the Release Period, and how it affects the proposed class,

---

[48] *Valdez v. Se. Kan. Indep. Living Res. Ctr.,* No. 10-1194-KHV/DJW, 2011 WL 1231159, at *2 (D. Kan. Mar. 29, 2011).

[49] *Id.* (citing *McCaffrey v. Mortg. Sources, Corp.,* No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011)).

[50] *Id.*

however, will need to be addressed.  In addition, as will be noted below, there is an additional issue with the settlement agreement under the FLSA with regard to attorney's fees.

### c.   Attorney's Fees

The FLSA requires an award of reasonable attorney's fees and costs.[51]  The Court, however, has the discretion to determine the amount and reasonableness of the award.[52]  When inquiring into the reasonableness of the fee, the Court must consider "whether plaintiffs' counsel are adequately compensated and ensure that a conflict of interest does not taint the amount plaintiffs receive under the agreement."[53]

In this case, the parties do not adequately address attorney's fees in their motion.  They simply state that Plaintiff's counsel will receive fees equal to one-third of the gross settlement amount and costs not to exceed $6,000.  The parties also state that Defendants will not oppose or object to this request.

Several decisions from the District of Kansas indicate that the Court must skeptically examine an attorney fee award when a defendant has agreed to not contest it.[54]  "The Court also must examine any proposed service award payments to determine whether they are fair and reasonable."[55]  Furthermore, at least one decision from the District of Kansas states that the "determination of the reasonableness of both the attorneys' fees and [the] plaintiff's service

---

[51] 29 U.S.C. § 216(b); *Christeson v. Amazon.com.ksdc, LLC*, No. 18-2043-KHV, 2019 WL 354956, at *8 (D. Kan. Jan. 29, 2019) (citations omitted).

[52] *Christeson*, 2019 WL 354956, at *8; *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *5 (D. Kan. Jan. 3, 2017).

[53] *Valdez*, 2011 WL 1231159, at *3 (citation omitted).

[54] *Christeson*, 2019 WL 354956, at *8;  *see also Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2016 WL 2848919, at *4 (D. Kan. May 16, 2016) (citing *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2014 WL 5099423, at *9 (D. Kan. Oct. 10, 2014)).

[55] *Hoffman*, 2016 WL 2848919, at *4 (citations omitted).

15

award" will be affected by a reversion of the maximum fund to the defendant.[56]

Here, the Settlement Agreement provides that there is a total settlement fund of $330,000, and a maximum settlement amount of $231,928.13.  It also states that the net settlement is $165,000.  The Settlement Agreement provides for a payment from the total settlement fund for attorney's fees in a gross amount not to exceed $120,000, with class counsel fees not to exceed 33% of the total settlement fund (not to exceed $110,000), and a payment for costs and a service payment of $10,000.   The service payment is later broken out as $4,000.  There are also several provisions in the Settlement Agreement that allow the reversion of settlement funds to Defendants.  The Court is unclear on the breakdown of these amounts and how the attorney's fee and service award is calculated, particularly since the parties do not address attorney's fees, or the service award, in their motion for approval.

Plaintiff references *Hoffman v. Poulsen Pizza LLC*,[57] a case from the District of Kansas, stating that it stands for the proposition that the District of Kansas regularly approves similar settlements in FLSA collective actions.  In *Hoffman*, Judge Crabtree set forth the standards for FLSA certification and settlement procedures.  He also engaged in a detailed analysis regarding the settlement agreement's provision relating to attorney's fees.[58]  The parties are encouraged to review that case and case law cited in it with regard to service awards and attorney's fees and costs so the Court can make a determination on the reasonableness of the request for attorney's fees.  Accordingly, because issues remain with regard to the attorney's fees, the Court cannot approve the settlement agreement with regard to Plaintiff's FLSA claim.

---

[56] *Christeson*, 2019 WL 354956, at *8.

[57] 2017 WL 25386.

[58] *Id.* at * 5–9 (discussing service award and attorney fees).  The Court notes that prior to Judge Crabtree's approval, he denied approval of the settlement agreement because of issues with it.  *See Hoffman*, 2016 WL 2848919, at *4.

C.       Notice

As noted above, there are several issues with the Notice that does not allow the Court to approve it in full.

IV.   **Summary**

In sum, the Court grants in part and denies in part the parties' motion.  The parties will need to address the Release Period in the Settlement Agreement (and how it affects the proposed class definition), the Notice, certification of a collective action under the FLSA, and attorney's fees and the service award under the FLSA.  Once these issues have been addressed, and the parties submit a revised Settlement Agreement and Notice that meets the Court's approval, the Court can approve it and set a final settlement hearing.

**IT IS THEREFORE ORDERED BY THE COURT** that the parties' Amended Joint Motion for Settlement Agreement Approval (Doc. 28) is **granted in part and denied in part**.

**IT IS SO ORDERED.**

Dated: August 25, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE