IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**CHRISTINA MARIE SEAWELL,**
individually and on behalf of similarly
situated persons,

                Plaintiff,

    v.

**KONZA PRAIRIE PIZZA, INC. d/b/a
DOMINO'S PIZZA**, and **JEFFREY
MADDOX**,

             Defendants.

Case No. 2:20-cv-02130-JAR-KGG

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AGREEMENT

Plaintiff, Christina Marie Seawell, individually and on behalf of similarly situated persons ("Plaintiff"), by and through undersigned counsel, respectfully requests that this Court grant final approval of the Settlement and Release Agreement ("Agreement") [previously filed as Dkt. #28] reached by the Parties to this action. The Agreement allowed Delivery Drivers to participate in the settlement on a hybrid opt-in and opt-out basis, similar to the settlement structure approved by multiple courts in this Circuit[1] and analogous to the settlement recently and finally approved in *Fitzgerald v. Romans Road Pizza, Inc. et al*, Case No. 4:20-cv-577 (E.D. Mo.). Defendants Konza Prairie Pizza, Inc. and

---

[1] *Bessey v. Mand Made Pizza, Inc. et al.*, Case 1:18-cv-00938-LTB (D. Colo.); *Fletcher & Murray v. Tips, Inc.*, Case 1:18-cv-00937 (D. Colo.); *McKeon v. Integrity Pizza LLC, et al*, Case 18-cv-00932 (D. Colo.); *McFadden v. NFSM Pizza, Inc., et al.*, Case 18-cv-204 (D. Wyom.).

Jeffrey Maddox (collectively "Defendants") do not oppose Plaintiff's Motion or the relief requested herein for settlement purposes only.

As set forth below, the Agreement is fair and reasonable and should be approved by the Court. Accordingly, the Parties respectfully request the Court issue an Order in the attached proposed form:

(1) finally certifying the collective action pursuant to Section 216(b) of the FLSA and the class action pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only;

(2) granting final approval of the Agreement and adjudging its terms to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

(3) approving distribution of the Net Settlement Fund, as defined in the Agreement, to the Participating Class Members;

(4) approving a service award payment in the amount specified in the Agreement to Named Plaintiff Seawell;

(5) approving payment of the actual costs of the Settlement Claims in the amount specified in the attached Declaration of Jeffrey D. Johnson;

(6) approving attorneys' fees and costs to Collective Counsel[2] in an amount not to exceed one-third of the Total Settlement Fund;

---

[2] The term "Collective Counsel" refers to the attorneys who represent Plaintiff and the Collective Members.

(7)     permanently enjoining all Settlement Class Members (other than those who filed timely and valid Exclusion Letters) from prosecuting against Defendants and the Released Parties (as defined in the Agreement) any and all of the Settlement Class Members' Released Claims (as defined in the Agreement);

(8)     permanently enjoining the Class Representative from prosecuting against Defendants and the Released Parties any and all of the Class Representative's Released Claims (as defined in the Agreement); and

(9)     entering a judgment dismissing this case with prejudice in accordance with the terms of the Agreement.

## I.     <u>INTRODUCTION</u>

This class and collective action lawsuit for unpaid minimum wages against Defendants was settled following a full-day mediation between the Parties, subject to the Court's approval. The Court has already preliminarily approved the Parties' settlement. Pursuant to that Order, the Parties, through the third-party administrator, sent the approved Notice of Class Action Settlement and Claim Form to all Settlement Class Members, thereby notifying all Settlement Class Members of the date and time of the Fairness Hearing, along with contact information to obtain additional information regarding the Fairness Hearing. The Parties have fully complied with the terms of the Court's Order. Following notice, there are no objections to the Agreement. *See generally*, **Exhibit 1**, Declaration of Jeffrey D. Johnson, Vice President of CAC Services Group, LLC

3

("Johnson Decl.") and **Exhibit 2**, third party status report following notice. Similarly, no Delivery Driver or Class Member has requested to participate in the Fairness Hearing. *See* **Exhibit 3**, Declaration of Class Counsel Jay Forester. As this Motion and the relief requested is wholly unopposed by Class Members and Defendants for purposes of settlement only, the Court should grant the motion, enter the attached proposed order, and dismiss the case with prejudice.

## II.    <u>BACKGROUND</u>

Plaintiff filed this lawsuit ("the Litigation") on behalf of herself and similarly situated Delivery Drivers who were hired to deliver pizzas and other food and drinks for Defendants. Plaintiff alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and related state law by failing to pay the similarly-situated pizza delivery drivers the lawful and applicable minimum wage because their expense reimbursements were purportedly insufficient to cover their automobile expenses while delivering pizzas for Defendants. Defendants categorically deny Plaintiff's allegations and submit Plaintiff and all other delivery drivers were paid lawfully and in compliance with the FLSA and related state laws.

The Parties participated in an alternative dispute resolution ("ADR") process that included a full-day mediation before an experienced and highly regarded wage and hour class and collective action mediator, Allen Blair, Esq. Prior to the mediation, the Parties engaged in extensive pre-mediation discovery that included the production of mileage and mileage reimbursement data for each store where Settlement Class Members were employed by Defendants. In preparation for the mediation, the Parties drafted detailed

4

mediation statements and damages analyses. Based on this information, Plaintiff was able to review, analyze and formulate potential damage calculations under the FLSA and applicable state law. Utilizing these calculations, Plaintiff concluded she had sufficient information concerning Plaintiff's claims and Defendants' defenses from which to reach a fair and arms-length settlement of this matter. The terms of the Parties' settlement are set forth in the Parties' Agreement.

From Plaintiff's perspective, the Agreement provides an excellent outcome for the Settlement Class Members. Defendants contend that they properly reimbursed the Delivery Drivers' automobile expenses and complied at all times with the FLSA and applicable state wage and hour laws. Defendants further contend that even if liability were established by Plaintiff, which they deny, they acted in good faith and that a two-year, as opposed to an extended statute of limitations, should apply to Plaintiff's claims. Defendants also dispute that Plaintiff's claim is appropriate for class or collective action treatment, except for settlement purposes.  If the Court were to accept these arguments, it would negate a substantial percentage, or the alleged damages and disqualify a large number of Delivery Drivers who were employed by Defendants beyond the two-year period.

Notwithstanding these defenses, Plaintiff was able to obtain a recovery for all eligible Settlement Class Members who were employed by Defendants during the maximum potentially applicable statutory periods. Plaintiff respectfully submits that this Motion should be granted because the proposed Agreement satisfies the criteria for approval

under federal law, falls well within the range of reasonableness, and is wholly unopposed.

## III.    THE TERMS OF THE AGREEMENT

The Parties negotiated the Agreement on behalf of the following Settlement Class of Delivery Drivers:

> *All persons who have worked as a delivery driver for Defendant Konza Prairie Pizza, Inc. between July 21, 2017, and February 24, 2022.*

The Agreement allowed Delivery Drivers to participate in the Settlement by filing a Claim Form during the notice period, similar to settlement structures that were previously approved in full (including approving the settlement structure, service award to Named Plaintiff, and the same request of attorneys' fees request of up to 33.3% of the total negotiated fund) by numerous courts.[3] To further ensure the finality of this litigation for all involved, the Agreement provides that even those Delivery Drivers who elected not to file a claim would still receive a minimum payment amount, as specified in the Agreement *and* also remain eligible to make a claim from their full pro rata share of the FLSA fund.

Following the class action settlement notice, no objections to the settlement were filed and just three Settlement Class Members[4] filed timely and valid requests for exclusion. *See* Johnson Decl.

---

[3] *See, e.g., Doyle v. Be Hurd, Inc. et al.*, Case 3:20-cv-138 (E.D. TN.); *Hathaway v. Valley Pizza, Inc. et al.*, Case 1:20-cv-089 (E.D. TN.); *Rechtoris v. Dough Management, Inc. et al.*, Case 3:18-cv-708 (N.D. IN.); *Moreno v. Prairie Pizza, Inc. et al.*, Case No. 3:19-cv-532 (W.D. N.C.); *Fitzgerald v. Roman's Road Pizza, Inc. et al.*, Case No. 4:20-cv-577 (E.D. MO); *Marnoch and Breit v. GBR Pizza, Inc. et al*, Case 5:19-cv-257 (E.D. N.C.); *Smith v. Southeastern Pizza People, Inc. et al*, Case 7:19-cv-105 (E.D. N.C.); and, *Ball v. New River Valley Pizza, LLC, et al*, Case 7:19-cv-362 (W.D. VA.).

[4] Three out of 984 or 0.305% of all Class Members.

Subject to this Court's final approval, the total payments to be made by Defendants under the Agreement (the Maximum Settlement Amount) are as follows:

1.  The Settlement Claims Administrator, CAC Services Group, LLC, will receive an amount not to exceed that specified in the attached Declaration of Jeffrey D. Johnson, Vice President of CAC Services Group, LLC;

2.  As further detailed below, Plaintiff Seawell will receive a modest service award in recognition of the work involved and the benefits achieved by the Plaintiff;

3.  As further detailed below, Class Counsel will receive attorneys' fees that equate to less than their projected lodestar or one-third of the Total Settlement Amount and advanced litigation costs, as specified in the attached Declaration of Class Counsel, J. Forester;

4.  All Authorized Claimants, or the Settlement Class Members that chose to affirmatively opt-in to the settlement will receive their share of the FLSA Claim Fund;

5.  Any Settlement Class Members that have elected to opt-out of the Settlement will retain all rights against Defendants, subject to applicable statutes of limitations and other defenses. All remaining Settlement Class Members will receive a minimum payment, from the Rule 23 Fund.

6.  All Settlement Class Members who have neither excluded themselves from the settlement nor Opted-In to the Settlement will be eligible to submit a claim for up to the full amount of their Potential Settlement Payment, less any minimum

7

payment already received, from the Contingent Settlement Fund, which will initially be funded by the amount specified in the Agreement of the Maximum Settlement Amount, supplemented by unclaimed funds from the aforementioned settlement funds.

**IV.    THE COURT SHOULD APPROVE THE AGREEMENT**

**A.    Standard for Final Approval of Federal Rule 23 Class Settlements**

In determining whether to approve a proposed class settlement, courts must consider whether the settlement is fair, reasonable, and adequate. *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004). Courts in the Tenth Circuit examine four factors in determining whether this standard is satisfied:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002) (examining Rule 23 settlement). In consideration of these factors, approval of the Settlement Agreement is warranted. *See Tuten v. United Airlines,* Inc., 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (presumption in favor of voluntary settlement "especially strong" in class actions) (citation omitted).

8

1.      **The Proposed Settlement Was Honestly and Fairly Negotiated**

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ogden v. Figgins*, No. 2:16-CV-02268-JAR, 2017 WL 5068906, at *2 (D. Kan. Nov. 3, 2017) (citing *Ashley v. Reg'l Transp. Dist.*, No. 05-cv-01567WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *Id*. (citing *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997)).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. Moreover, as conveyed to Class Counsel in significant informal discovery efforts including the exchange of documents, Defendants, both the corporate entities and the individuals, are of limited means, such that any additional recovery could quickly lead to bankruptcy ensuring that the Class Members get nothing or a very small percentage of any damages ultimately awarded. Through formal and informal discovery, each Party possessed ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The Parties' counsel rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *Marcus v. State of Kansas, Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in an

adversarial setting, there is an initial presumption that the settlement is fair and reasonable").

 2.  **Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt**

The complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair and reasonable. To continue through trial would expose the Parties to significant risks. *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable.").

Plaintiff believes that her claims are strong but recognizes that success is not guaranteed. Plaintiff believes Defendants violated FLSA and Kansas state law by: (1) failing to pay her and other similarly situated Delivery Drivers the federal minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendants, and (2) by failing to ensure that drivers received paid rest breaks during their shifts and were properly compensated for missed or interrupted meal breaks. Defendants, however, contend that their reimbursements to Delivery Drivers are reasonable approximations of their automobile expenses and do not cause Delivery Drivers' wages to fall below the federal minimum wage. Similarly, Defendants contend that Plaintiff and Class Members were afforded meal and rest breaks as required by Kansas law. Defendants are also confident that Plaintiff would ultimately not prevail in certifying the

class because individualized inquiries would be necessary to determine the Class Members' damages. Nonetheless, while Defendants believe that their defenses are strong, they recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the Parties dispute whether the three-year limitations period applies, or whether the two-year period for non-willful violations would be applicable in this matter. *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations). Second, Defendants contend their actions were at all times taken in good faith, negating the FLSA's liquidated damages provision. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

### 3. The Value Of Immediate Recovery Outweighs The Possibility Of Any Future Relief

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id*. at 1015. The issues here are complex and would be vigorously contested, resulting in significant time and expense if the litigation

continues. Barring a settlement, the Parties will engage in additional discovery, including depositions of the individual Defendants, Plaintiff, and numerous opt-in Plaintiffs. The Parties would also have to engage in extensive motions practice including completing briefing on Plaintiff's Motions for Class Certification and Approval of Notice, as well as Defendants' Motion to Decertify the Class, if the Court does certify a class, and Motions for Summary Judgment as to certain Individual Defendants and possibly on Defendants' affirmative defenses. The trial would include testimony by representatives of the Defendants, Class Members, and expert witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendants which could bankrupt them, leaving nothing for the Class Members to recover. Based on these circumstances, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be approved. *See Jackson, et al. v. Ash*, No. 13-2504-EFM-JPO, 2015 WL 751835, at *2 (D. Kan. Feb. 23, 2015) ("The value of the settlement must be weighed against 'the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.'") (quoting *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006)).

4.  <u>**Counsel Believe The Settlement Is Fair And Reasonable**</u>

Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Marcus*, 209 F.Supp.2d at 1183; *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89. When evaluated in light of the four factors identified by the Tenth Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

B.    **Standard for Approval of FLSA Settlements**

As stated above, the Settlement provides relief for individuals who have filed Claim Forms and for those who have chosen not to opt-out of the Settlement. For many of the reasons stated above regarding settlements under Rule 23, the Settlement is a fair and adequate resolution under the FLSA and ought to be approved.

In a lawsuit brought by an employee against his or her employer under § 216(b), the employee may settle and release FLSA claims if the parties present to the court a proposed settlement and the court approves the settlement. *See Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 127-28 (D. Colo. 2016) (court approval is required to settle both Rule 23 class actions and FLSA claims, discussing approval of a settlement agreement in a hybrid FLSA collective and Rule 23 class action); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (stating that, to settle private FLSA actions, the parties must present their proposed agreement to the court, which may then enter a stipulated judgment

13

after scrutinizing the agreement for fairness); FED. R. CIV. P. 23(e) ("The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement-- may be settled ... only with the court's approval."). The settlement should be approved when it is a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Elston v. Horizon Glob. Ams., Inc.*, No. 19-2070-KHV, 2020 WL 2473542, at *3 (D. Kan. May 13, 2020).

As explained above, the Parties are represented by experienced and competent counsel and the Parties engaged in extensive negotiations.  In addition, counsel for the Parties have discussed at considerable length Plaintiff's assertions and Defendants' defenses, and their respective legal theories in support of their positions. This settlement of these claims results from a compromise between the Parties on a variety of *bona fide* disputes regarding issues of law and fact, including the applicable reimbursement rate for the Delivery Drivers' vehicle expenses. The Settlement occurred only after informal discovery, including production of mileage and reimbursement records to facilitate both Parties' ability to make detailed legal and factual analyses of the claims and defenses, arms-length negotiation between Plaintiffs' counsel and Defendants' counsel, and a full-day mediation with a mediator experienced in resolving wage & hour disputes under the FLSA. The Parties stipulate that they are resolving the matter to avoid unnecessary further costs, time, and risks associated with continuing this litigation. The Parties also considered the inherent risks in bringing the matter to trial, judicial resources, and the costs and time associated with further litigation and determined a settlement would be in the public's interest.

The Settlement negotiated in this case reflects a reasonable compromise of the disputed issues and other relevant considerations. All Parties, through their attorneys, voluntarily agreed to the terms of the Settlement during negotiations. All Parties were counseled and represented by their respective attorneys throughout the litigation, negotiation, and settlement process. The Settlement amounts apportioned to the Opt-Ins will take into account and be apportioned based on the specific number of miles driven and rate of reimbursement of each Opt-In. Counsel for all Parties agree that, in their respective opinions, the Settlement is fair and reasonable under the circumstances. Because the Settlement agreed to by the Parties is a fair and equitable compromise of a *bona fide* dispute, the Parties request that the Court approve the Settlement and enter a final judgment dismissing the case, in its entirety, with prejudice.

### C.    Named Plaintiff Deserves a Service Payment

Service payments "are justified when necessary to induce individuals to become named representatives." *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 235 (10th Cir. 2009) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001)). The modest service payment sought for Ms. Seawell should not only be approved because it is within the limits of awards approved in various districts and related cases,[5] but also because she substantially assisted counsel in achieving this

---

[5] For example, it is within the range previously provided for named plaintiffs in each of *Bessey v. Mand Made Pizza, Inc. et al.*, Case 1:18-cv-00938-LTB (D. Colo.)($5,000.00); *Fletcher & Murray v. Tips, Inc.*, Case 1:18-cv-00937 (D. Colo.) ($5,000.00); *McKeon v. Integrity Pizza LLC, et al*, Case 18-cv-00932 (D. Colo.) ($5,000.00); *McFadden v. NFSM Pizza, Inc., et al.*, Case 18-cv-204 (D. Wyom.) ($7,500.00).

settlement on behalf of the class, and this time and effort are deserving of a service award. She was responsible for providing guidance and assistance on numerous occasions to Plaintiff's Counsel. Ms. Seawell also participated in the settlement process. Therein, Ms. Seawell advocated for *all* of the delivery drivers. There is no question that the other delivery drivers have substantially benefited from these actions. Without such efforts, this case would not have been brought and this settlement would not have been achieved. *See*, Plaintiff's Counsel's Declaration. Therefore, payment of a service award, as agreed by the Parties, is justified.

### D.     Attorneys' Fees and Costs Provided in the Settlement are Appropriate

Class Counsel is entitled to recover attorney's fees and costs under the federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, (the "FLSA"). Moreover, even in the absence of a statutory entitlement to attorney's fees and costs, Class Counsel is entitled to a fee/cost award under the equitable common fund doctrine, which "permits an apportionment of attorneys' fees 'under circumstances where a party has been successful in creating a fund from which other passive beneficiaries derive monetary advantage.'" *Leprino Foods Co. v. Factory Mutual Ins. Co.*, 653 F.3d 1121, 1136 (10th Cir. 2011) (internal quotations omitted).

Where attorney's fees and costs are allocated as part of a class action settlement such as this, courts in the Tenth Circuit analyze the propriety of the award by applying a hybrid approach combining: (i) the percentage fund method (which calculates fees based solely on a percentage of the total common fund created) with (ii) the lodestar method (which subjects fee requests to a review for reasonableness). *See Gottlieb v. Barry*, 43 F.3d 474, 483

(10th Cir. 1994); *In re Qwest Communications Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1148

(D. Colo. 2009). The Tenth Circuit has endorsed the twelve factors articulated by the Fifth

Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) when

reviewing the reasonableness of percentage of the fund awards. *See Brown v. Phillips*

*Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) ("Because [the *Johnson*] factors measure the

attorneys' contributions, they are [] appropriate in setting and reviewing percentage fee

awards in common fund cases.").

1.   **The Requested Attorney's Fee Should be Approved as Reasonable**
**when Viewed as a Percentage of the Total Settlement Fund**

In class action cases, counsel who obtain a common fund settlement are entitled to

recover reasonable attorneys' fees paid from the fund. *See Gottlieb*, 43 F.3d at 482. Judge

Posner, in a case addressing class counsel's entitlement to fees from a common settlement

fund, has cogently summarized the equitable and economic principles underlying class

counsel's entitlement to a fair fee:

> The object in awarding a reasonable attorney's fee, as we have been at pains
> to stress, is to give the lawyer what he would have gotten in the way of a fee
> in an arms' length negotiation, had one been feasible.  In other words the
> object is to simulate the market where a direct market determination is
> infeasible.  It is infeasible in a class action because no member of the class has
> a sufficient stake to drive a hard – or any – bargain with the lawyer.  So the
> judge has to step in and play surrogate client.
> ***
> The judicial task might be simplified if the judge and the lawyers bent their
> efforts on finding out what the market in fact pays not for the individual hours
> but for the ensemble of services rendered in a case of this character.  This was
> a contingent fee suit that yielded a recovery for the "clients" (the class
> members) of $45 million.  The class counsel are entitled to the fee they would
> have received had they handled a similar suit on a contingent fee basis, with

17

> a similar outcome, for a paying client. Suppose a large investor had sued Continental for securities fraud, and won $45 million. What would its lawyers have gotten pursuant to their contingent fee contract? We know that in personal-injury suits the usual range for contingent fees is between 33 and 50 percent but we also know that in large commercial litigation with prospects of multimillion dollar recoveries the percentage frequently is tapered – it might be 33 percent of the first million, 25 percent of the next million, and so on down. The class counsel did not present and the judge did not ask for testimony or statistics concerning the fee arrangements in commercial litigation comparable to the present suit. Yet it might be quicker and easier to generate such evidence than it would be to hassle over every item or category of hours and expense and what multiple to fix and so forth.

*In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572-73 (7th Cir. 1992).

Courts also have recognized that common fund recoveries based on contingency fee representation are especially beneficial to employee plaintiffs who may not possess the financial resources to hire counsel on an hourly basis to pursue their claims:

> Common fund recoveries are contingent on a successful litigation outcome. Such contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk. Many individual litigants, including the class members here, cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation.

*Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, *8 (S.D.N.Y. Oct. 5, 2012) (internal citation and quotation omitted).

Here, application of the percentage of recovery method supports Class Counsel's recovery of the requested attorneys' fees. The percentage fee award is approximately one-third of the total settlement fund, inclusive of an additional amount provided to cover

Plaintiff's counsel's costs as of the date of the filing of this Motion. This percentage recovery falls well within the range that is regularly approved by courts within the Tenth Circuit. *See*, *e.g.*, *Florece v. Jose Pepper's Restaurants, LLC*, No. 20-2339-ADM, 2021 WL 5042715, at *6 (D. Kan. Oct. 29, 2021) ("In common fund cases, "attorneys' fees of one-third or thereabouts are generally deemed reasonable") (quoting *Elston*, 2020 WL 6318660, at *7); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole.  This is within the normal range for a contingent fee award."); *Vaszlavik v. Storage Technology Corp.*, 2000 WL1268824, *4 (D. Colo. Mar. 9, 2000) (noting "20%-50%" is ordinary contingency fee range); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, 1993 WL 355466, *2 (W.D. Okla. June 8, 1993) (noting that fees up to 40% "common in complex and other cases taken on a contingent fee basis"). Application of the "percentage of recovery" method supports Class Counsel's requested fee recovery.

> 2.    **The Requested Fee Should be Approved as Reasonable Under the *Johnson* Factors**

In assessing the reasonableness of the attorney fee awards in class actions, courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Housing Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Gottlieb*, 43 F.3d at 483; *Qwest Communications*, 625 F. Supp. 2d at 1148. The *Johnson* factors include: (1) the time and labor required, (2) the novelty and difficulty of the question presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by

the attorneys due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed

or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the

amount involved and the results obtained, (9) the experience, reputation and ability of the

attorneys, (10) the "undesirability" of the case, (11) the nature and length of the client

relationship, and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

                *i.*      **Time and Labor Required.**

    Class Counsel will expend in excess of 150 hours in bringing this case to a successful

settlement and conclusion. *See* Plaintiff's counsel's declaration. Applying counsel's

recently-approved rates yields an attorney's fee lodestar in excess of the attorneys' fee

request provided by the Settlement that neither nor Class Members oppose. This negative

multiplier is well less than the typical 2.5 – 5.0 multiplier approved by this Circuit as

reasonable when conducting a lodestar crosscheck on fees requested. *Id*.; *see also*, *In re*

*Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir.2002) (affirming fee award based on a lodestar

multiplier of 2.57); *Chieftan Royalty Co. v. XTO Energy Inc.*, No. CIV-11-29-KEW, 2018 WL

2296588, at *10 (E.D. Okla. Mar. 27, 2018) (stating that 2.58 multiplier was "well within the

range of multipliers approved in the Tenth Circuit, and other circuits, when a lodestar cross-

check is used" to evaluate the reasonableness of a percentage-based fee award (emphasis

added) (collecting cases)); *Mishkin v. Zynex, Inc.*, 2012 WL 4069295 at *2 (D.Colo. Sep. 14,

2012) (collecting cases approving multipliers ranging from 2.5 to 4.6). In sum, the "time and labor" factor supports the proposed fee award.

### ii.    The Novelty and Difficulty of the Question Presented.

Three of the fundamental questions in this case were: (1) whether Plaintiffs were entitled to and did in fact receive reimbursement compensation at or reasonably approximating IRS proscribed rates; (2) whether Plaintiffs were entitled to and did in fact receive statutorily protected meal and rest breaks; and, (3) whether these questions could be resolved on a class or collective action basis. Analysis of these questions and effective prosecution of the class claim required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA and FED.R.CIV.PROC. 23. In sum, the "novelty and difficulty of issues" factors support the proposed fee award.

### iii.    The Skill Requisite to Perform the Legal Service Properly.

Employee minimum wage rights cases are governed by a highly technical and specialized set of state and federal wage statutes and regulations. Class Counsel's practice is focused in this highly technical area and Counsel has litigated numerous class cases under the FLSA and other states' wage and hour laws on both an individual and class/collective action basis. *See* Plaintiff's counsel's declarations. Class Counsel had the requisite skill to perform the legal service required in this complex litigation.

      *iv.*    *The Preclusion of Other Employment by Class Counsel Due to Acceptance of the Case.*

This Court has recognized the inherent preclusion of other work implicit in litigating large and complex class actions on behalf of lower wage workers:

> Attorneys attempting to handle a large class such as this are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case rather than strictly working on paid hourly wages. There is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts.

*Whittington,* 2013 WL 6022972, at *6. Here, Class Counsel spent significant hours on this case, remuneration for which was entirely contingent on the outcome of the matter.

      *v.*    *The Customary Fee.*

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the settlement fund recovered. *See Peterson v. Mortgage Sources, Corp.,* 2011 WL 3793963, *12 (D. Kan. 2011) (citing *Rosenbaum v. MacAllister,* 64 F.3d 1439, 1445 (10th Cir. 1995) and *Gottlieb v. Barry,* 43 F.3d 474, 483 (10th Cir. 1994)). In analogous collective actions under section 16(b) of the FLSA, courts routinely award attorneys' fees of 35% or more in common fund settlements. *See, e.g., Bruner v. Sprint/United Mgmt. Co.,* No. CIV.A. 07-2164-KHV, 2009 WL 2058762, at *7 (D. Kan. July 14, 2009) ("Fee awards in these cases have ranged from four percent to 58 per cent of the common fund and resulted in total fee awards ranging from a few thousand dollars to over $5 million"); *Braun v. Wal-Mart, Inc.,* 2009 WL 1592532

(Minn.Dist.Ct. June 1, 2009) (38% fee award in a $54 million settlement). Here, the requested fee award is well within the percentage range approved in similar cases and Defendants have expressed non-opposition to an award up to 33.3%. Thus, the "customary fee" factor supports the requested fee award.

###### vi.     Whether the Fee is Fixed or Contingent.

Class Counsel represented Plaintiffs on a contingency fee basis. Had Plaintiffs not prevailed, Class Counsel would have not recovered any of the incurred fees and out-of-pocket costs. Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). Many lower wage workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). As is noted above, "[t]here is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts." *Whittington*, 2013 WL 6022972, at *6. In sum, the risk associated with the contingency fee arrangement here augurs for Court approval of the 35-36% fee award sought. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1151 ("A contingent fee . . . is designed to reward counsel for taking the risk of prosecuting a case

without payment during the litigation, and the risk that the litigation may be unsuccessful.")

> vii.     *There Were No Time Limitations Imposed by the Client or the Circumstances.*

The *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium. Because this case proceeded through a normal course of litigation without time limitations imposed by Plaintiff or the circumstances, this factor is not relevant to the instant case. *See Qwest Communications*, 625 F. Supp. 2d at 1151.

> viii.     *The Amount Involved and the Results Obtained.*

As detailed above, the settlement represents a significant recovery on behalf of the Class. This is especially true considering that class certification had not been granted at the time the settlement was reached. For example, had Defendants defeated a motion for Rule 23 class certification on behalf of Plaintiffs, this case would only have proceeded on behalf of the smaller percentage of class members who initially elected to affirmatively "opt-in" to the case. Here, all affected class members will receive compensation. Thus, the "amount involved and results obtained" factor supports the proposed fee award.

> ix.     *The Experience, Reputation and Ability of the Attorneys.*

As is described in subsection 3 above, Class Counsel's practice is focused on representing workers in wage and hour class and collective action litigation. *See* Plaintiff's counsel's Declaration. Class Counsel's experience is demonstrated by the excellent result

obtained for the Class in this case. Thus, the "experience, reputation and ability" factor supports the requested fee award.

> x.    *The "Undesirability" of the Case.*

Class Counsel would never describe a case they chose to prosecute on a contingency basis as "undesirable." However, because the Class Members here are not highly paid employees and would not ordinarily have the means to hire counsel on an hourly fee basis, this case could only have been litigated via a contingency fee arrangement. This coupled with the significant time commitment required to pursue this case with no guarantee of payment made the case undesirable to other counsel not prepared to take on such a commitment without a retainer or fixed fee. Thus, the "undesirability" factor supports the requested fee award.

> xi.   *The Nature and Length of the Professional Relationship with the Client.*

"In describing this factor, the *Johnson* court noted that a lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer." *Qwest Communications*, 625 F. Supp. at 1153. Unlike corporate clients, who may need future legal services from its counsel, the likelihood that many Class Members will be seeking additional representation from Class Counsel is slim. Moreover, the unpaid wage claims asserted in this case do not lend themselves to continuous, long-term attorney-client relationships. Nonetheless, the fact that not a single Class Member has objected to any part

of the settlement, including the proposed attorney's fees and costs, weighs in favor of the requested fee award.

### xii.    *Awards in Similar Cases.*

Due to the specific nature of the claims asserted, it is difficult to identify cases of similar size and scope. However, as discussed in sections B and C.5 above, courts both in and outside of this jurisdiction have approved fee awards based on similar percentages of the settlement fund that is sought here. Thus, the "award in similar cases" factor, like all the other *Johnson* factors discussed herein, supports the proposed fee award.

### <u>CONCLUSION</u>

The Settlement is fair, adequate, and reasonable. It will result in considerable payments to Settlement Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation and through the assistance of an experienced mediator. For the foregoing reasons, Plaintiff respectfully requests that the Court finally approve the Settlement.

Dated: May 27, 2022

Respectfully submitted,

Jay Forester*,
(Texas Bar No. 24087532)
Katherine Serrano*,
(Texas Bar No. 24110764)
**FORESTER HAYNIE PLLC**
400 N. St. Paul Street, Suite 700
Dallas, Texas 75201
Telephone: (214) 210-2100
jay@foresterhaynie.com
kserrano@foresterhaynie.com
*Admitted *Pro hac vice*

*/s/ Richard M. Paul III*
Richard M. Paul III (KS #17778)
Laura C. Fellows (KS #26201)
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Rick@PaulLLP.com
Laura@PaulLLP.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 27, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of records.

*/s/ Richard M. Paul III*